UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| TREK METALS INC. | : |
| Plaintiff, | : |
| v. | : |
| UNITED STATES, | : Case No. 25-00183 |
| Defendant. | : |

**COMPLAINT**

Plaintiff Trek Metals Inc. ("Trek Metals" or "Plaintiff"), by and through its attorneys, allege the following against the United States, acting by and through U.S. Customs and Border Protection ("CBP"):

**CONTESTED DETERMINATION**

1. This action concerns CBP's final affirmative determination of evasion of the antidumping ("AD") and countervailing duty ("CVD") orders, A-570-943 and C-570-944, respectively, covering certain oil country tubular goods ("OCTG") from the People's Republic of China ("China") (collectively, the "Orders").

2. U.S. Customs and Border Protection ("CBP") issued the final affirmative determination of evasion on February 24, 2025. *See U.S.* Customs and Border Protection, *Notice of Determination as to Evasion—EAPA Consolidated Case Number 7890 (Feb. 24, 2025)* ("TRLED Determination"). CBP affirmed the TRLED Determination in an administrative review determination dated July 2, 2025. *See Admin. Review Determination in EAPA Consolidated Case No. 7890,* CBP Office of Trade, Regulations and Rulings (July 2, 2025) ("Review Determination").

**JURISDICTION**

3. This action is brought pursuant to section 1517(g) of the Tariff Act of 1930, as amended by the Trade Facilitation and Trade Enforcement Act of 2015 ("EAPA"), to contest CBP's July 2, 2025 decision. *See* 19 U.S.C. § 1517(g).

4. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), which provides the Court with exclusive jurisdiction over all civil actions commenced under 19 U.S.C. §1517.

**STANDING**

5. Plaintiff is a U.S. importer of merchandise subject to CBP's evasion determination and is an interested party within the meaning of 19 U.S.C. § 1517(a)(6) and 28 U.S.C. § 2631(k)(1).

6. In addition, as the result of CBP's determination of evasion, Plaintiff is also now subject to AD and CVD duties and therefore has standing to sue because it is "adversely affected or aggrieved by agency action" within the meaning of the Administrative Procedure Act ("APA"). 5 U.S.C. § 702; *see* 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5.").

**TIMELINESS OF THE ACTION**

7. Plaintiff is commencing this action with the concurrent filing of a summons and complaint, within 30 business days after issuance of the July 2, 2025 Determination. Accordingly, Plaintiff has commenced this action within the time limits specified in 19 U.S.C. § 1517(g)(1).

**STATEMENT OF FACTS**

8. On January 20, 2010, the U.S. Department of Commerce ("Commerce") issued a CVD order covering OCTG from China. *Certain Oil Country Tubular Goods From the People's Republic of China: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order,* 75 Fed. Reg. 3,203 (Jan. 20, 2010). On May 21, 2010, Commerce issued an AD order covering OCTG from China. *Certain Oil Country Tubular Goods From the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order,* 75 Fed. Reg. 28,551 (May 21, 2010).

9. On January 18, 2024, and February 1, 2024, the U.S. OCTG Manufacturers Association (the Allegers) submitted allegations of evasion against 10 U.S. importers, including Trek Metals. The Allegers claimed that Trek Metals and the other named importers were importing Chinese-origin OCTG that was transshipped through Thailand and thereby evading the AD/CVD orders on OCTG from China.

10. On February 23, 2024, CBP's Trade Remedy Law Enforcement Directorate ("TRLED") initiated an EAPA investigation of Trek Metals and the other named importers. *See* TRLED *Determination* at 3. *See also CBP Memorandum, "Initiation of Investigation for EAPA 7890-7898 and 7954 (Consolidated Case 7890)",* dated February 23, 2024.

11. The entries covered by the investigation were those entered for consumption from February 1, 2023 through the pendency of the investigation. *Id.* at 2.

12. On March 6-7, 2024, CBP issued CF28 Requests for Information ("CF28s") to Trek Metals and the other named importers, "requesting production documentation including manufacturer information, raw material documentation, mill certificates, purchase orders,

3

commercial invoices, transportation documentation, and proof of payment." *See* Review Determination at 4.

13. Trek Metals submitted its CF28 response on April 5, 2024. Of the ten importers who received a CF28, "only Trek Metals provided all of the requested information." *See* Review Determination at 4.

14. Trek Metals' CF 28 response – which consisted of 1266 pages of responsive documents regarding one entry of OCTG that Trek imported from Thailand – included extensive production documentation from the Thai manufacturer, Thai Oil Pipe Co., Ltd. ("TOP") and covered every step of the production process in Thailand from imported billet (a solid semi-finished steel input) to the finished pipe. *Id.*

15. Trek Metals had only five entries of OCTG from TOP, and all were entered during 2023. Trek Metals had no imports from the other Thai producer (*i.e.*, Petroleum Equipment (Thailand) Co., Ltd. – "PET") that reportedly used "hollow billet" in its production. *Id*.

16. On May 31, 2024, CBP issued a notice of investigation and interim measures in EAPA Consolidated Case Number 7890. *See Letter from CBP, "Notice of Initiation of Investigation and Interim Measures – EAPA Cons. Case 7890*," dated May 31, 2024 ("NOI").

17. On May 31, 2024, CBP also issued RFIs to Trek Metals and the other importers as well as to TOP and PET. *See TRLED Determination* at 5, fn. 18.

18. On July 4, 2024, Trek Metals submitted its response to CBP's RFI. *Id*.

19. Trek Metals' RFI response included extensive documentation, including: (a) Trek Metals' business license, articles of incorporation and organization chart (TREK RFI at Ex. 1-2); (b) Trek Metals' audited financial statements, chart of accounts, trial balance, internal financial statements, tax returns, accounting flowcharts, bank statements, and accounts receivables / account

payables details (TREK RFI at Ex. 3-10); (c) A listing of Trek Metals' customers, pages from the company's website, product code list, and copies of TOP's product brochures from 2019 and 2022 (TREK RFI at Ex. 11-14); (d) Photographs and travel information from Trek Metals' mill visit to TOP (TREK RFI at Ex. 15-16); (e) Copies of Trek Metals' POs for OCTG from TOP and complete document packages for each entry / PO (including copies of TOP's production records for each step of its conversion of billet to OCTG) (TREK RFI at Ex. 18-19); (f) Copies of all of Trek Metals' emails with TOP and TOP's Authorization Letter (TREK RFI at Ex. 21-22); (g) Trek Metals' quantity and value reconciliation, General Ledger detail, and sales sub-ledger data (TREK RFI at Ex. 23-25); and (h) copies of TOP's API 5CT certificate and production process record flow (TREK RFI at Ex. 17 and 26).

20. On July 9, 2024, TOP submitted its response to CBP's RFI. TOP's response contained extensive documentation (56 exhibits in total), including information about its production capacity, monthly production, production process, significant inputs and input suppliers, a video of its manufacturing facility and manufacturing process, reconciliation worksheet for its raw material purchases, and production documents for selected U.S. sales. *See TOP RFI Response*. CBP requested that TOP provide documentation regarding 10 shipments to the United States during the POI; only one of the shipments requested by CBP was to Trek Metals. *Id*.

21. On July 8, 2024, CBP instructed Trek Metals to resubmit its April 4 CF28 response with bracketing of any business confidential information. *See TRLED Determination* at 3, fn. 9. Trek Metals submitted a confidential and public version of its CF 28 response on July 21, 2024. *Id*.

22. On July 26, 2024, CBP extended the deadline to make a determination as to evasion until February 18, 2025. *Id* at 6.

23. On August 16, 2024, CBP issued a Supplemental Request for Information ("SRFI") to TOP, and on August 26, 2024, CBP issued a SRFI to Trek Metals. *Id*. at 6. TOP submitted its response to the SRFI on September 10, 2024, and Trek Metals submitted its response to the SRFI on September 16, 2024. *Id*. at 5, fn. 19.

24. On October 8, 2024, Trek Metals submitted voluntary factual information in accordance with the timeline set out in the EAPA regulations. *See Trek Metals' Submission of Voluntary Factual Information* (October 8, 2024). This submission provided a detailed chronology of the transactions for two of Trek Metals' POs, including two intermediaries (middlemen) and supporting documentation such as copies of contracts, invoices, packing lists, and payment documents. *Id.* at Exhibits 1—9.

25. From November 4, 2024 to November 8, 2024, CBP conducted an on-site verification at TOP in Thailand and issued a verification report on December 6, 2024. *See CBP Memorandum, "On-Site Verification Report*," dated December 6, 2024 (Verification Report). The Verification Report also covered CBP's verification of PET. *Id*.

26. During the verification, CBP conducted a factory tour and observed TOP producing OCTG from billet. *Id*. at 21—23. The verification report details each step of the production process from the raw material (steel billet) to the finished product (OCTG). *Id*. CBP also took photographs at each step of the production process confirming TOP's manufacturing capabilities. *Id*. at Attachment VII.

27. In its verification report, CBP noted that it observed that the factory workers at TOP were "actively participating in various production processes" during the factory tour, that the workers operating machinery who were interviewed "were able to demonstrate their knowledge of the machinery and showed example records that were produced from their test", and that "the

6

factory was covered in steel debris and dust, which is indicative of a factory that operates regularly." *Id*. at 22—23.

28.     According to the verification report, CBP observed both mechanical and other testing conducted on the OCTG being produced by TOP during the factory tour, and both the sample and the pipe passed the product testing – again confirming TOP's capabilities to produce OCTG. *Id*. at 24—26.

29.     CBP also noted in its verification report that it requested and was granted access to TOP's production records during its on-site visit, as well as access to TOP's accounting system and sales ledger which "showed all sales to the importers". *Id*. at 24—27.

30.     According to CBP's verification report, TOP confirmed that the OCTG purchased by Trek Metals and one other importer was <u>produced only from billets</u>:

> We requested additional transactions that involve Energy Pipe and Trek Metals purchasing OCTG that began production from mother pipe from China. TOP provided a list of invoices and associated bills of lading for purchases from Energy Pipe and Trek Metals and stated that **these two importers only purchased products produced from { } billets.** *Id*. at 26.

31.     In the verification report, CBP noted that TOP described "mother pipe" as "hollow pipe" that has "already undergone heat treatment and do not undergo any additional heat treatment". *Id*. at 20. These "mother pipe" ("hollow pipe") are different than billet which is a solid, semi-finished steel input that is heated and pierced in order to form hollow pipe. *Trek Metals Written Argument* (December 19, 2024) at 7.

32.     TOP estimated that its production from mother pipe was the majority of its total OCTG production. While the record shows that a large majority of TOP's imports were of mother pipe (hollow pipe), TOP also imported a significant volume of billet for its OCTG production. *Verification Report* at 20.

33. On December 19, 2024, Trek Metals and the Allegers submitted written arguments, and on January 6, 2025, Trek Metals submitted its response to Allegers' written argument. *See TRLED Determination* at 6.

34. On February 24, 2025, CBP issued its Notice of Determination as to Evasion in Consolidated Case 7890 ("TRLED Determination"). TRLED announced that it had "drawn an adverse inference with respect to the foreign producers and exporters PET and TOP and with respect to the U.S. importers Copley, Kana, Lixin Energy, Longfellow, and TSPGA." *Id*. at 65. TRLED further stated that "{t}he adverse inference in this case is that all of the OCTG that PET and TOP exported during the POI is Chinese-origin." *Id*. at 66.

35. TRLED applied its adverse inference to Trek Metals even though TRLED found that Trek Metals was fully cooperative and despite the fact that Trek Metals provided comprehensive "tracing documentation" to prove that TOP used <u>only billet</u> – not "mother pipe" – to produce the OCTG that Trek Metals imported from Thailand.

36. On April 4, 2025, Trek Metals timely submitted a request for administrative review.

37. In its review request, Trek Metals argued, *inter alia*, that CBP failed to base its evasion determination regarding Trek Metals on substantial evidence, relying instead on an adverse inference that was contrary to the record facts. *Trek Metals Request for Administrative Review* at 10—19. For example, CBP applied an adverse inference that all of TOP's OCTG was "mother pipe" from China, even though the record contained documentation showing TOP's purchases and importation of billets; TOP demonstrated during verification that it had billet in inventory; and the verification report contained extensive evidence that TOP had the equipment, machinery, and personnel to convert imported billet into OCTG, as TOP actually demonstrated at verification. Id.

8

38. On April 9, 2025, CBP (RR) notified the parties to the investigation of the commencement of the administrative review. *See R&R Review Determination* at 6.

39. On April 23, 2025, the Allegers filed a response to the administrative review requests from Trek Metals and five other importers. *Id*.

40. On July 2, 2025, CBP (RR) issued the Administrative Review Determination, affirming the TRLED Determination of evasion. *Id.*

41. Unlike the original evasion determination, CBP claimed in the Review Determination that "the use of adverse inferences is unnecessary to find substantial evidence of evasion in this case, and RR relies herein solely on the record and not on adverse inferences." *Review Determination* at 27.

42. After explaining that "mother pipe" falls with the scope of the AD/CVD orders on OCTG, CBP concluded that "the finished OCTG that contained Chinese 'mother pipe,' which Energy Pipe, Kana, and Trek Metals imported into the United States {from TOP} are 'covered merchandise'." *Id*. at 23. In effect, CBP continued TRLED's adverse inference "that all of the OCTG that PET and TOP exported during the POI is Chinese-origin" – notwithstanding its stated claim that its final evasion determination relied "solely on the record and not on adverse inferences." *See Final Determination* at 66 and *Review Determination* at 27.

43. In response to Trek Metals' argument that TOP used only billet – not "mother pipe" – to produce the OCTG that Trek Metals imported, CBP claimed that "the administrative record does not contain sufficient information that would allow CBP to trace whether each specific order of finished OCTG that TOP produced for Energy Pipe and Trek Metals used { } billets instead of in-scope 'mother pipe.'" *Id.* at 23.

44. CBP noted that there are 30 steps that are required to manufacture finished OCTG from billet, but TOP provided documentation for only some of those steps. *Id.* CBP indicated that the absence of certain documents made it impossible to confirm that TOP used billet to produce OCTG for specific purchase orders. *Id.*

45. CBP also claimed that it is not required to conduct an entry-by-entry review in order to determine whether TOP used billet to produce OCTG for Trek Metals' imports. *Id.* at 23—24.

46. Finally, CBP stated that the "proper recourse to challenge CBP's assignment of duties on an entry-by-entry basis is via a protest" if "some entries are ultimately proven not to contain subject merchandise." *Id.* at 24. CBP further noted that "to the extent that Energy Pipe and Trek Metals claim that some of their entries do not contain subject merchandise because they were made from { } billets, the burden would be on Energy Pipe and Trek Metals to provide the tracing documentation, rather than on CBP." "{I}t is the responsibility of the importer to provide to CBP sufficient documentation to support the importer's claims." *Id.*

## STATEMENT OF CLAIMS

### COUNT I

47. Paragraphs 1 through 46 are incorporated by reference.

48. The Enforce and Protect Act ("EAPA") directs the Court to determine whether an EAPA determination or administrative review was "conducted in accordance with those subsections." 19 U.S.C. § 1517(g)(1). The Court also must determine "whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 1517(g)(2).

49. "An abuse of discretion occurs {when} the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Royal Brush,* 44 CIT at __, 483 F. Supp. 3d at 1302 (quoting *Consol. Bearings Co. v. United States,* 412 F.3d 1266, 1269 (Fed. Cir. 2005)).

50. The record confirms that TOP purchased two input materials for its production of OCTG in Thailand: (1) Chinese "mother pipe" (*i.e.*, "hollow pipe") and (2) Chinese steel billets.

51. TOP demonstrated during verification that it produces OCTG from steel billet sourced from China.

52. During verification, TOP provided CBP with requested documentation showing some shipments of OCTG to the United States had been produced from Chinese "mother pipe". However, when CBP asked for similar documentation specifically regarding shipments to Trek Metals, TOP informed CBP that all of the OCTG purchased by Trek Metals (and one other importer) was produced only from billet.  The record contains no evidence or any indication that Trek Metals imported OCTG that was produced by TOP from Chinese "mother pipe".

53. Accordingly, CBP's conclusion that "the finished OCTG that contained Chinese 'mother pipe,' which Energy Pipe, Kana, and Trek Metals imported into the United States are 'covered merchandise'" is not supported by substantial evidence.

## COUNT II

54. Paragraphs 1 through 53 are incorporated by reference.

55. The substantial evidence standard of review requires review of the administrative record as a whole, including that which fairly detracts from its weight. *Nippon Steel Corp. v. United*

*States,* 458 F.3d 1345, 1351 (Fed. Cir. 2006). "Substantial evidence is more than a scintilla and must do more than create a suspicion of the existence of the fact to be established." *Id.* (cleaned up and quoting *NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939)).

56. CBP failed to base its evasion determination regarding Trek Metals on substantial evidence, relying instead on an adverse inference that was contrary to the record facts. For example, CBP applied an adverse inference that all of TOP's OCTG was "mother pipe" from China, even though (a) the record contained documentation showing TOP's purchases and importation of billets; (b) TOP demonstrated during verification that it had billet in inventory; and (c) the verification report contained extensive evidence that TOP had the equipment, machinery, and personnel to convert imported billet into OCTG, as TOP actually demonstrated at verification.

57. CBP's evasion determination with respect to Trek Metals was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

## COUNT III

58. Paragraphs 1 through 57 are incorporated by reference.

59. Section 517 of the Tariff Act of 1930, as amended (19 U.S.C. § 1517) provides, "with respect to covered merchandise, the Commissioner shall make a determination, based on substantial evidence, with respect to whether such covered merchandise was entered into the customer territory of the United States through evasion."

60. "Covered merchandise" is defined as "merchandise that is subject to a CVD order issued under section 706, Tariff Act of 1930, as amended (19 U.S.C. § 1671e), and/or an AD order issued under section 736, Tariff Act of 1930, as amended (19 U.S.C. § 1673e)."

61. TOP described "mother pipe" as hollow pipe, and CBP determined that the Chinese "mother pipe" purchased and exported by TOP was covered merchandise.

62. In contrast to "mother pipe", OCTG produced from billet in Thailand is not covered merchandise; it is non-subject merchandise.

63. Thus, CBP abused its discretion in determining that Trek Metals entered "covered merchandise" through evasion.

## COUNT IV

64. Paragraphs 1 through 63 are incorporated by reference.

65. In the Review Determination, CBP claimed that its determination that all OCTG exported from Thailand by TOP was produced from Chinese "mother pipe" was based on the record and not on any adverse inferences. In effect, however, CBP continued to apply TRLED's adverse inference "that all of the OCTG that PET and TOP exported during the POI is Chinese-origin."

66. CBP's stated claim that its final evasion determination relied "solely on the record and not on adverse inferences" is not supported by substantial evidence and was, therefore, arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

## COUNT V

67. Paragraphs 1 through 66 are incorporated by reference.

68. Trek Metals had only five entries of OCTG from TOP during the period of investigation.

69. CBP wrongly claimed that it was not required to review each of Trek Metals' five entries to determine whether Trek Metals imported "covered merchandise" (*i.e.*, OCTG produced from Chinese "mother pipe").

70. The record in this EAPA investigation contains extensive documentation from Trek Metals and from TOP showing that TOP used billet – not "mother pipe" from China – to produce the OCTG imported by Trek Metals in these five entries.

71. There can be no lawful finding of evasion if Trek Metals' entries did not contain "covered merchandise."

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant:

1. Holding unlawful and setting aside the TRLED Determination and the Review Determination;

2. Ordering CBP to refund Plaintiff any monies collected on its imports as a result of CBP's evasion investigation in EAPA Consolidated Case No. 7890;

3. Awarding Plaintiff its costs and reasonable attorney fees; and

4. Granting any such additional relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Frederick P. Waite*
Frederick P. Waite
Kimberly R. Young

VORYS SATER SEYMOUR & PEASE LLP
1909 K Street, NW, Suite 900
Washington, DC 20006

*Counsel to Plaintiff*
TREK METALS INC.

Dated: August 14, 2025

14